Good morning, and may it please the Court. My name is Eric Menhart. I'm on behalf of the appellant Patrick Hately in this case. As the Court is aware, there are a couple of different issues to be discussed here this morning, and I'd like to very briefly address the initial questions, which were the dismissal of what I'm going to call the Virginia statutes. These are the computer fraud statutes that the State of Virginia has in place. And our concerns in these particular cases— Can you talk up just a little bit, or maybe bring the microphone closer? Thank you. I will do both of those things. Thank you. Thank you, Your Honor. As to the State statutes, we have a couple of different concerns. First and foremost is that the State statutes were subject to a relatively convoluted litigation history at the lower level. As the Court is aware from the briefing, we had two prior litigations that are effectively at issue in this case. The first is what we're calling Hately 1, and then there was what was called Hately 2. In this case that is up on appeal now is Hately 2. There was a relatively complex litigation history, but the long and short of it was that the district court in Hately 1 dismissed our State statute claims  The issue on that particular argument, the question of whether the court properly said that it was collaterally stopped? Yes, Your Honor. Our reading of the Hately 2 decision on the motion to dismiss was that first that there was a failure to state a claim, which we certainly had some concerns about. Then my understanding of the ruling was that in the alternative, it was collaterally stopped from being raised pursuant to the dismissal in Hately 1. So from our perspective and Failure to state a claim, was that premised on the judge's belief that it didn't allege back injury or damages? In Hately 1, and hopefully I'm getting to your question. Just dealing with the trial judge's disposition of the state law claim, the basis upon which he relied to do so. And you're referring to the trial judge in Hately 2? Yes. In this one? Yes. So the trial judge in this particular case looked back at Hately 1, realized that the district court judge in Hately 1 had dismissed our state court causes of action for failure to state a claim. And then based on that information, the district court judge in Hately 2, which is on appeal now, came to the conclusion that the allegations had been made in the prior case. And just as you said, got to the collateral estoppel issues. While I'm trying to separate them, I think they are relatively similar in the sense that the concern here is that we failed to state a claim for damages under the statutes. Long and short of it. And our concern here is that, and we did quite a bit of briefing of this in the law, that the, and by the way, the Fourth Circuit has already addressed this issue. The Fourth Circuit has said under these statutes, consequential damages are available. And there's no question, damages are problematic in these cases. Because you do have this question, you know, look, no one's car got run into by a bus, right? The car was $20,000. We all understand that. So the damages are an issue here, but the Fourth Circuit has explained to us that consequential damages are available here. And particularly in Hately 2, we made allegations that were literally, I think, eight pages long, where we went, almost like we were billing as lawyers, right? Everyone in this room knows how that works. .2 of an hour is based on this amount of time doing this type of activity. The consequential damages were extremely complex and comprehensive in this second claim. The question of the 12B6 dismissal motion for the complaint failing to state, you say it does lay consequential damages, and you say it's squarely answered by us in a previous case that those damages are recoverable under this state law. That's correct, Your Honor. So then the court then alternatively says it's collateral estoppel.  And the collateral estoppel. And the argument that it's not is. Well, so you're exactly correct. The collateral estoppel was a question, and, you know, we can go through the elements, right? I mean, the first, you know, was the issue. Don't do that. Just tell me the reason. I don't want to be all the elephants of it. Sure. The bottom line is this, is that in Hately 1, the state court causes of actions were never addressed in any substance. What had happened, and again, trying to be efficient here, what had happened is that we made allegations on an initial complaint. We had two defendants because we wanted to do the right thing and get sufficient. Are you just saying that it's too generalized and vague, the initial judgment of the court to be considered for purposes of collateral estoppel in this second action? That's correct. Your Honor, in Hately 1, it's exactly what the court said. It's too generalized, too vague, but the district court judge, Judge Lee, dismissed it with leave to amend. And we did, in fact, amend our complaint later. But then subsequently, and at that time, we had additional factual evidence for a new defendant. We sought to bring in a new defendant. The judge ruled that there was going to be prejudice to the current defendant only, current defendant, and because of that prejudice and because this addition of these state court causes of action were going to come in again, then at that point, the judge said, listen, this is prejudicial to the defendant. Now, obviously, we don't agree with that. But the judge is the judge and we're the attorneys, and so certainly we listen to it. But then the judge in Hately 2, which is on appeal right now, said, well, that dismissal of those state court claims in Hately 1 served as a dismissal of, you know, that it was collaterally estopped. But our position is that, look, we never had any opportunity to make any claims whatsoever in this case. And the fact that the claims were going to come in subsequently made it a problem for the defendant in that case, right? But the Hately 1 judge said very clearly, listen, we are not saying that these claims don't have teeth to them. All we're saying is that there's prejudice to bring in the defendant. And I'm sure this court is aware that our friends in the Eastern District of Virginia work on the rocket docket style. And this is not terribly atypical in that court. I could be of a statement. It seems to me that your argument with regards to the Virginia Computer Claims Act is pretty straightforward one way or the other on the other side. But when you turn to that Stewart Communications Act and talk about whether or not this is an electronic story, that is to me what you're standing in front of us right now. But I may be overstating that. It just seems to me that's a big issue. Your Honor, I would agree with you, and I think it makes perfect sense for us to turn to that issue. On the Stewart Communications Act, and you are aware that there's been two amicus briefs filed in this case, it is a relatively, in my opinion, important case in this circuit, because it's the first time that the Fourth Circuit has specifically addressed these issues that are coming before you today. Now, the Fourth Circuit has, you know, been working around the edges in certain respects before, and that certainly is relevant. But the bottom line for us here on this particular issue, which I appreciate you raising, Judge Winn, is that – I didn't raise this issue. Fair point, Your Honor. I did raise it. I filed the opinion. The bottom line in this issue is that the Fourth Circuit has not had an opportunity to review it, but great news, many other courts of appeals in the United States. Break it down for me. What are you saying? The other side says that if you open an email that's been delivered or whatever, that's not Stewart. But if it's unopened and unread, it's Stewart. Is it that simplistic, or stuff that goes to spam that's not open is under the Act, or something that goes to trash is under the Act? But if I open it and it's there on my email, that's not covered under the Stewart Communication Act. Is it that simple? Your Honor, if only it were. But is that the allegation? I think your answer should be yes. I think it's fair to state that that is the position that the defendant is taking in this case, and certainly they could address it better than I can. But the trial court ruled on that. It's not just what he's taking on it. Isn't that the ruling of the trial court on it? That's correct. The trial court did accept the defendant's point of view in this case. Our position is that while we have the highest degree of respect for the district court in this instance, this is an extraordinarily minority view. And particularly with- He gave some reasons. I'm sorry? He gave reasons. He went down to statute and analyzed it and says it just didn't fit. Sure. Maybe that just sounds like it's common sense, but his reasons are really what the nub of this is about. Yes, and I think that's a fair point. Part of the reasoning here, and, again, with the highest degree of respect for the district court, we think there were some relatively clear errors here. And one of our concerns is that in the district court ruling, there was this introduction. And, again, these were cross motions for summary judgment at the district court level. And there was this introduction of the electronic communication service and the remote computing service, the ECS versus the RCS. None of that had been briefed at all. Now, of course, the court has the right to raise something sui sponte. We don't have any concern about that. But the concern that we have is that these issues started to show up at the very first time during the district court's ruling. And, unfortunately, but perhaps predictably, you see a situation where there were some factual concerns about how the court went through the analysis. Let me give you one particular instance. The court relied on a case called In Re Double Click privacy litigation in New York. And that case had nothing to do with any type of Internet service provider that would maintain communications for many different parties at any one time. To the contrary, that case talked about, you know, a computer like a laptop in front of me having files placed on the computer. Well, you know, my laptop in front of me is not an Internet service provider like Gmail or Google or Microsoft or Hotmail. And so the mere suggestion that that case is relevant is a red flag, frankly. The other concern in this particular instance with the district court's ruling here was that the court is introducing, and again the defendant suggested this, but the court is suggesting that there are different categories of copies of e-mails which are, so for example the court said, well, one copy belongs to the plaintiff in this case or the user and another copy belongs to the Internet service provider. Isn't the real problem here, this electronic storage definition Congress put out, it's from 1986. I mean, isn't that the real problem? And the world has advanced. The world has changed a little bit since 1986 and now we're stuck with two definitions, subsection A, subsection B. You say both apply. We do. Now subsection A cannot apply, can it? I mean, that's got to be dealing with third party type, the ISB that has it in storage. Subsection A, you can't with a straight face tell me that applies. Your Honor, I can tell you with a straight face it's a harder argument. That's a good answer, but the truth of the matter is you don't need it. And that's correct, we don't need it. It's hard to argue subsection A applies here because it's dealing with those communications once it goes out in between. That's part of this act. So if your argument rests somewhere, you say it's stronger, but it seems to me I don't see how in the world it fits under A. Maybe you can tell me how it fits under A. Well, Your Honor, I would agree with you that the precedent and the analysis that's been done by prior courts as to subsection A is less strong for the appellant in this case. We don't, I don't disagree with that. That being said, you know, and the analysis has basically said, well, look, that is more quote unquote intermediate storage, right? And without getting very technical, it's on the server before the user has any interaction with it. The user doesn't even know it exists because it's going through the various networks. And then finally when the user sees it, okay, now it's being quote unquote stored, right? And that takes us to subsection B, which is where we think that our argument is really quite strong. And, you know, our perspective is that, look, there's no real trick to this. Look at what all the other circuit courts have done. They've looked at the statute and they've said, yes, look, this makes perfect sense that this is something that's being stored by an electronic communications servicer, and this is something that is contemplated under the statute. Going back to your point. Let me throw a red herring in this thing. Subsection A doesn't apply, but at the end of subsection A there's a word, and. So why does not an electronic communication have to meet both of them, A and B? Well, our perspective on that is that the backup storage element, and again, obviously many smart people have had this conversation before we have, but the reality is that most courts have said, look, we believe that to the extent that it is covered under B, then it's subject to protection. And very quickly before my time runs out here, I wanted to go to what Judge Motz brought up, which was that, you know, she said, look, the technology has changed, and that's absolutely correct. But remember. Judge Wynn brought it up, actually. I apologize. I just. But I want to know how does subsection B apply? Sure. So subsection B. The technology is changing. That's not going to help you here. That's something Congress ought to go and fix. But we can't fix that for Congress, but we can interpret B. Sure. And so from our perspective is that to the extent that subsection B applies, the statute says, and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such a system. So for us, in this particular instance, and getting outside the, setting aside the facts here, but it's important to understand this is a licensed medical doctor in the middle of the night packing into someone's e-mail account. So there's no question that that individual was able to get into the e-mail account to obtain, alter, to obtain at least, whether he altered, we don't know, but he obtained information, and the e-mails were in electronic storage in that Internet service provider. So from our perspective, you know, we think it's pretty clearly under B, whether or not it's under A. I realize my time's expired here, but I'll bring this up in my rebuttal. All right. Counsel. Good morning, Your Honor, and may it please the Court, Jonathan Frieden with Jim Miller, Odenfeldman, and Pittleman on behalf of the defendant below and the appellee in this appeal. So briefly, if I could address the Court's decision with respect to the motion to dismiss. Obviously, the collateral estoppel issue here has been clearly briefed, but under the circumstances here, the issue, which has to be identical. Well, that's still on my mind. Can we deal with the Storage Communication Act first, then we'll come back to that? Absolutely, Your Honor. And if I read the Court correctly, I think that you want me to focus on Part B of that definition of electronic storage? I want you to focus on the part you think doesn't apply. They maintain both does, but I tend to probably lean to view that A does not. But B, I think you've got a problem. So I think that with respect, and I'll start with A, just because I think it's the easiest argument and it's clear, although I don't think B is very much more difficult. Part A refers of the definition, it says the electronic storage means A, any temporary intermediate storage of a wire or electronic communication. Let's accept that that doesn't apply. That's that one that's in the middle, goes between, in the third party. It's B that I want you to talk about. Yes, Your Honor. That refers to any storage of such communication, thereby referring back to Part A, by an electronic communication service for the purposes of backup protection of such communication. So there are three parts of that Part B of the definition. Can you have more than one backup protection? Yes, Your Honor, you can. So you can have backup protection, and then is the email that's sitting in front of me while I open it, is that also backup? Is that there being held for me to send to somebody else if I want to? In the case of this, Your Honor, which is very similar to the case of Weaver in the Central District of Illinois, it is not. And it's because this is a web-based system. The web-based email systems, it's common, and remember that Theofel dealt with, from the Ninth Circuit, dealt with the situation that's not web-based. Anything on a web-based system, common email, that has been opened is not protected. It is not. If it goes to spam and it's not opened, is that protected? Anything that's on a web-based email. Good question. I need an answer. If it goes to spam and not opened, is that protected? And not opened, is that protected? Yes, Your Honor. I just have it sitting on the computer. Don't open it. Protect it. Sitting on the computer or on the server? I just come to be in. I don't open it. Protect it, right? Yes, Your Honor, but it's protected and protected. Once I open it, not protected. Correct, Your Honor. As long as the server is the only place that you keep a copy. And actually, Your Honor, that's consistent with Theofel. When Theofel was amended in February of 2004, the court added a line that said that a remote computing service might be the only place that a user stores his messages. In that case, the messages are not stored for the purposes of backup protection. So Microsoft Outlook, that's not a web-based email, is it? So Outlook can be both, Your Honor. So there's Outlook.com. The one that's not. If I get it on that, protect it, right? Because it's automatically downloaded to your computer, and that's why. That one's protected. Gmail not protected. Gmail not protected. There are a number of cases that say that. That doesn't make any sense to me. I'm sorry, but I don't get that. I don't understand how you can have an email that's open on your computer in Gmail, but if it's on Microsoft Outlook because it backs it up to the computer, it's protected. And then at the same time, if it goes straight to spam, it's protected. Or the trash is protected. Or I don't know if it's protected, but if you open it, it's not protected. And, Your Honor, I think this gets back to what you were saying before about this court is in the place of interpreting the law rather than making the law. And it may well not make sense, but the person, the group that has to fix it is Congress. But this is exactly what Congress intended. In the congressional report from the Judiciary Committee on this statute when it was being passed, the committee said that sometimes. It seems to me that important emails are the ones you're actually going to open. And that sounds like to me where you want some protection from. I don't need a protection from one that goes to spam or typically to trash mostly, or one that I don't open. It's the ones that I open that are important to me that I don't want other people looking at and stuff. It seems like to me that's, why would they want to protect that? Well, the purpose of the statute was really focusing on emails in transit because remember that it was enacted at a time when emails had to bounce from computers. We dealt with that. B can't be both. B can't have both on transit because if both of them are intermediate, then you don't need a B. Well, a number of courts, Your Honor, have held that B and A work together, that that such communication portion of the definition. They don't mean the same thing. They don't mean the same thing, Your Honor, because the email that's bouncing, we'll call that the original email. Now, technologically speaking, there's copies being made along the line. So if an email is going from server A to server C and it bounces to server B in between, server B, whatever system that they're using or service, may make a copy of it for the purposes of backup protection by an electronic communication service. That copy is protected by B. It's a copy of such communication, meaning the temporary copy that's moving along the chain. That's why B and A work together. B was never meant to protect an email that I decide as a user to leave on a system because the email that I decide to leave on a system was clearly intended to be held by a remote computing service. But, see, I think your argument falls apart because certainly it can't be intended to protect spam. That, I think, was my colleague's point to you. Your Honor, I believe. Well, if you start talking about what was intended to be protected, I just think communications systems have just outreached the statute. That is true, Your Honor, and perhaps it needs to be amended. But to interpret the statute the way that it's written. But you're talking about what is intended to be protected. And I go back to they can't have intended to protect spam where they don't intend to protect information that is important to you, that you're reading. What they intended to protect, Your Honor, was the email that was in transit that hadn't reached you. And we know that it's reached you when you open it. If you have not opened it and just sent it to a spam folder, it hasn't reached the destination. That's what they meant to protect. The Court is correct in stating that the Congress did not intend a special protection over spam and not emails that had been read. They didn't have a context of spam at the time that they enacted this statute in 1986. What they intended to protect was the email. Spam is a collateral beneficiary. It's a collateral and unintended beneficiary of the statute. Yes, Your Honor. And in this instance, Your Honor, the district court's opinion in this case is not inconsistent with FEFL. The Weaver case out of the Central District of Illinois essentially came down the same way, pointing to the language that I just quoted from the amended version of FEFL, saying that if I, as a user, leave an email stored with my email system, that that email is stored not by an electronic communication service in that context, but a remote computing service. And as the Court knows from the definition in the statute of remote computing service, it's just a service that's providing computer storage through an electronic communication service. So an email that I leave in my inbox, at that point, is being stored by a remote computing service. And although it's protected by other provisions of the Stored Communications Act that deal with governmental access, it does not provide a private right of action to the user of the email account. And that's what we're talking about here. When the Court asks, are these emails protected, spam is protected from governmental interference by two things, the provisions of the Stored Communications Act that talk about how the government is supposed to obtain such electronic information, but also by the warrant requirement in the Fourth Amendment since Warshak was decided by the Sixth Circuit. What we're talking about here is a much more narrow application of a very narrowly written statute. The Stored Communications Act was not meant to be a comprehensive Internet privacy statute. It couldn't have been in 1986. As the Court's pointed out, the technology has outpaced the statute in this instance. It was intended to be a very narrow protection of certain types of communications in a way that tried to provide some Fourth Circuit-like protections because they were uncertain that the Fourth Circuit would apply to those communications. Well, after Warshak, I believe that the answer is that the Fourth Circuit does apply. And so the governmental conduct with respect to such communications is probably governed in most jurisdictions. I'm not aware of any case that has decided that Warshak was wrongly decided or distinguished it, that warrants are required just like it would be for any other information. What we're talking about here is whether a person has a private cause of action against another person who merely reads roughly a dozen e-mails over 16 minutes where none of those e-mails had any preculinary value. And under the Stored Communications Act, which only provides a civil cause of action, where those e-mails were stored in electronic storage, meaning they were the temporary intermediate storage, which we, I think, have concluded doesn't apply, or if they were stored by the electronic communication service for the purposes of backup protection. There are lots of large issues in this case, Your Honor, but none of them are required to be addressed by the court because the fact is, is that unlike in Theophil and virtually, and I believe every other case that has addressed these issues, we know what the electronic, what the e-mail system was doing with respect to these e-mails. The e-mails stored for the backup purposes by the e-mail system were not these e-mails. At summary judgment, declaration was provided in support of our motion for summary judgment from the administrator of the Virginia Community College system e-mail system. And what he said in that declaration, and it was uncontroverted, that the e-mails that are stored by the, whether it's an ECS or an RCS, but the e-mails that are stored by the e-mail system for the purposes of backup protection are stored in an electronic vault. It cannot be obtained using the login credentials that my client used to access the e-mails of Mr. Haley. So not only did he not access e-mails stored by an electronic communication service at all, he didn't even access e-mails stored by the e-mail system for the purposes of backup protection because that access was impossible. The fact is, is that the statutory language is clear. The legislative history, to the extent that the court needs to resort to it, is clear. And Congress actually intended the result that the district court in this case held and that we asked the court to affirm. I would like to address quickly the comment that- Do you think there can be only one backup? No, Your Honor. There can be more than one backup. And I can give an example to clarify, if you wish. If my client had, if there were two vaults, if there was a backup on one site and then another backup of all of these e-mails on another site made by the e-mail system for the purposes of backup protection, both were there. For instance, they were in two physical locations in case one building caught on fire, and my client had accessed either of those servers, then my client would have violated the act. But in these circumstances, that's not the case. There's been a suggestion that other circuits have decided in a manner that's favorable to the The fact is that this is the first circuit court to address squarely this issue since the AFL. The first circuit, and I believe the case that was cited was United States v. Councilman, dealt with Part A of that definition. And what they concluded was that the term electronic communication includes transient electronic storage that is intrinsic to the communication process for such communications. And we discussed that with respect to the bouncing. It didn't even discuss the issue of electronic storage under Part B. The second circuit, although they haven't squarely addressed this issue, in the second court case cited in the briefs that was decided in 2016, they recognized that the majority view was that once the user of an entirely web-based e-mail system opens an e-mail he has received, that e-mail is no longer in electronic storage on an electronic communication service because it's on a remote computing service, and therefore it's not covered by the civil action portion. So B deals with electronic storage or backup storage. Doesn't that B apply whether that's immediate or whether it is post-transmission? Is it different than A, that it has a broader application? Your Honor, I believe that a good reading of the statute is that it's broader. But it has to be something stored by the electronic communication service for the purposes of backup protection. It can't be what's held on a remote computing service. Now, those e-mails are still protected from governmental interference by the procedures set forth in the Stored Communications Act. But Congress didn't intend to give a broad right of action for privacy violations in the Internet. It intended to only address a very specific type of intrusion, and that was essentially an intrusion. Let's break it down. Why is this business of storage, why is it when I open a g-mail and I open the e-mails there and there's a whole line of them, shut the computer off and come back and it's still there, why am I not looking at it as being stored by g-mail? You may be looking at it that way, Your Honor, but the fact is that the key part of the statute— But as a matter of fact, why is it not being stored? Because if it wasn't stored, when I come back on, it would be gone. It is stored, Your Honor, but it's not stored by an ECS for the purposes of backup protection. And that's what's required under this very narrow civil right of action under a very narrow statute. That's where it gets all confusing when you say not the backup protection. I'm told that you can delete an e-mail all you want to delete it, but it is still there. And in this case— Even on web base. That is true, Your Honor. And the way it works in this case is if you deleted that e-mail in your inbox, then they would have gone to that vault I told you about, which is where the e-mails are stored for the purposes of backup protection. And you could have asked. In fact, in this case, the plaintiff did, in fact, do that, which is how he got some of the evidence to raise these claims. He made a request to the administrator of the VCCS e-mail system, the same person that signed a declaration saying that these e-mails were not stored for the purposes of backup protection, because those e-mails are stored in the vault. An administrator or a person working for him has to go to the vault, download them, and send them to you. Now, courts have cut both ways on this issue. Is that right? Courts have cut both ways on this issue. No circuit court has addressed this issue squarely. The majority of the district courts that have decided this issue have agreed with the district court in this case. And the Second Circuit and also the District of Ohio have both issued decisions saying that the majority view is what we urge upon the court to that. But the fact is, Your Honor, it doesn't matter whether the court follows the rule of BFL or the rule that's espoused by the district court in this case, because my client, in any event, prevails. Because with respect to the majority rule, that an unopened e-mail has reached its destination, it's not stored by an electronic communication service for the purposes of backup protection, according to both the language of the statute and the legislative history, obviously under that rule we would prevail. But under the CFL rule, we would prevail as well. CFL dealt with non-web-based e-mail, and it made clear in the opinion that if you're using a remote computing service and you're just storing your e-mail on there, which is exactly what the plaintiff in this case indicated that he did, then that's storage on a remote computing service. And that may be protected from the government, but it doesn't give you a private right of action. I see that my time is up. Is it okay for someone to take your password, open your e-mails up, and read it? I wouldn't suggest that it's okay, unless those e-mails... Or if they go read your spam and none of those have been opened, they can be prosecuted for that. They can read something you have read. Under this statute, Your Honor... Why does that not sound absurd? Your Honor, that's what the statute says. And they meant to do for this to be an absurd result, that folks who... care about the most. But you're telling me there's no protection. Someone steals or illegally gets a password, goes in, reads their e-mail as a private entity, private person, that's okay. Government can't do it. That's correct, Your Honor. Under this statute, this statute... There are courts who have cut the other way on that issue. There are a handful of courts that have cut the other way. We have somebody out there that believes that is not the way it should go. And maybe one day, maybe either Congress or the Supreme Court can get a hold of this and help us on it. But that doesn't... It doesn't make sense to me. Well, Your Honor, it makes sense in the context of when the statute was enacted and why it was enacted. It was enacted to essentially focus on the protection of the transmittal, as opposed to the storage. Because candidly, Your Honor, in 1986, there wasn't a whole lot of people having a server. Server space was expensive in 1986, and there weren't a lot of places that would just offer you a ton of storage to leave your e-mail set up there. And it was designed to protect those transmitting e-mails, but also the e-mails that the e-mail service itself saved for its own administrative purposes, which, once again, there's no factual issue here that these were not those e-mails. But can I just... I'm sorry. I'm really... I need all the help I can get, shall we put it. Yes, Your Honor. The statute talks about backup protection, and it was my understanding that as soon as you send something on the computer now, on whatever service you use, there are all kinds of backups going everywhere.  So when you send an e-mail, your e-mail system likely keeps a copy for the purposes of backup protection of that sent e-mail. And I thought that it was duplicating this all over the place. There were all of these protections floating around. No? I think it depends on the specific system. There is a copy made. Technically, Your Honor, a copy is being sent to who receives your e-mail. Right. In terms of whether there's multiple copies, there may well be multiple copies. Many of the systems, e-mail for instance, the main e-mail as opposed to the e-mail structure here, saves multiple backups of everything that is transmitted. Right. But neither a user nor a person using login credentials of a user has access to those copies. Right. And so those copies are protected. They're stored for the administrative purposes of the e-mail system, not... Yes, but they are a communication that is... In an electric communication service for purposes, there is this backup protection for them. That's what I don't... It seems to me that by talking about backup protection, it was the backup protection that wasn't in the forefront of the people that wrote this statute. And now that world has changed. It was actually in the forefront of their minds. Well, they had a different view of what backup protection was... That is correct. ...than what backup protection is now. Than what people perceive it to be now. But they were stuck with the words backup protection. Right. At the time they enacted the statute, they were focused on the backup protection for the administrative purposes of the service that was being provided. Right. Of the e-mail service, not yours and mine as a user. So, yes, they were very focused on a very limited set of backup purposes. And, candidly, technology has outpaced the law in this regard. Right. Now, had there been a situation where there was access to an e-mail and that access actually caused an injury to property or person, there are a number of states, including Virginia, that have laws that provide a private write action for that. But this isn't one of those laws. I see that my time is up. Thank you very much. We ask that the Court affirm the District Court's decision. Thank you. Thank you, Your Honor. Mr. Minhart. Judge Wend, you and I were discussing the statute, and I want to apologize. I misunderstood which language you were asking about. You were asking about the definition section, and I was looking at 2701.  Also to make it clear to you that, quite frankly, I agree with my opposing counsel, which is that courts have largely looked at this and at the end of the statute and treat it as an or. Whether or not that's correct or not, that's what we've seen courts do. So that hopefully addresses that issue. A few factual questions. That's right. They did have an expert that said one thing. It will not surprise you to hear we had an expert that said another thing. So that's a factual question. The third thing is that we don't take the position that this is an all-encompassing Internet privacy statute. There are many other federal statutes on the books, including the state statute. We've never taken that position. I do want to go to this point, which both Judge Wend and Judge Motz have brought up, and it is the technology change. And there's no question that it's difficult to write laws for the future, and that's what we see here, and that's why we've seen so much litigation in this statute. But the reality is this, and there's a very good case that describes this in actually quite good detail. It's Cheng v. Romo, which is in our reply at page 12. And that judge did a very good job of explaining how, despite the technology changes here and now today, it's virtually the same thing. The only difference, in 1986, and I apologize for the hand signals here, but in 1986 you had a computer in front of you. You went up into the cloud, and then you downloaded the message, and then you changed the data onto your own device, and then you interacted with the device here. Now today, what are you doing? Well, you're going up effectively to the cloud, and you're still interacting with it, and it's still on the cloud, but the only difference is that you're still interacting with it on your computer. But what's the difference? The difference is that the quote-unquote data in 1986 came down to your computer, whereas today the data stays up on the cloud. But you're still able to view that data on your computer, just as you did in 1986. You still have to rely upon a server that you had in 1986, and you're still relying on that same server today. The only difference is this very small mechanical difference in how the data is displayed to you on your screen. In 1986, it got downloaded. Here today, it stays up on the server. But the actual interaction between the user, that is myself reading the email, and the server is virtually identical to what it was in 1986. So where does this go? I hear what you're saying. Where does it go? Where does what go? The data? What you're telling us. You're spending a lot of time explaining the differences between then and now. And so that's the given. Now what's the conclusion? So the conclusion is that while the law didn't necessarily predict what the future would look like, the law is still perfectly applicable today, because none of the terms that the law uses have changed. And Your Honor, you brought up one quick point about the— you asked, look, are there redundant backups everywhere? And the answer is yes. Counsel's argument is effectively that, well, look, there's one backup here on the left side of the desk, say, and then there's a whole other backup way over here that is owned and operated by someone else. So counsel's argument is that the user owns this backup here on the left, and that the Internet service provider owns this backup here on the right. It's just factually inaccurate. Because there are all these others that are— That's exactly right. It's a redundant backup system, and there's— But which one was protected by the statute? That's the question. The one protected by the statute is, in my opinion— No, no, no, I don't want your opinion. We want the answer. What did the statute say? It was for the purpose of backup what type? The statute and other courts agree with my opinion. No, quote here. I want you to quote here. What did the statute say? It was what kind of backup, what purpose? It was protected. It's right there in the language of it. What is it? Sure. The statute says, and I want to make sure I'm looking at the right statute, 2701, correct? Yeah, B, go ahead. Sure. To any wire or electronic communication while it is in electronic storage, okay? Okay. And so in both instances, 1986 and today, it's always in electronic storage because the Internet service provider always has some type of activity that it is maintaining. And so while today it's technically different, the Internet service provider was always the one that had that data under its own control, and that is exactly what the statute protected in 1986. It's protecting the exact same thing today. And you're saying the statute says, does not limit that to storage for purpose of backup for the ISP, not the user. You're saying it's any kind of backup. Is that what you're saying? Well, so my perspective is twofold. First, that the user can maintain a backup. The testimony in this case is that the user maintained the backup. But then the Internet service provider also has a backup. But again, so even if you take counsel's argument, right, that there's one here that quote-unquote belongs to the user and one here that belongs to the Internet service provider, the Internet service provider is protected, but the one owned by the user still up in the cloud up here is also being stored by the Internet service provider. And it's being stored, you believe, for purposes of backup protection. Yes, and quite simply... I mean, I think that's what Judge Gregory was trying to tease out from you. Sure, but I think that's correct. I mean, what other point is there to hold onto a copy of something I think the law is relatively clear that that's exactly what the statute intended, not only in 1986 but also today. It's to protect the content of the communications, which is being stored by a third party. That's what the law said in 1986. That's what it says today. So you're... I'm sorry. Go ahead. I just wanted to be sure that I understood. I thought I understood your colleague saying, okay, we're on some special service and it's protected there. And you say, well, okay, I'll give you that. Because there are all these other places up in the cloud where it's also stored for backup protection. Right. I think the challenge for us in most courts has been, and this is what my opposing counsel is saying, is that, look, you have to look at several different categories of backups and then assign who owns each of these particular backups. But the reality is, today and in 1986, the backups were only being maintained by the Internet service provider even then, and now it's exactly the same thing. And you can appreciate it from the defendant's point of view. He wants it to be more complex and difficult to figure it out. But quite frankly, that's not what we're looking at here. We're looking at storage by an Internet service provider, again, not only in the past but also here now in today's present day. Judge Gregory, you had a question? All right. Thank you, Your Honor. Thank you.
judges: Roger L. Gregory, Diana Gribbon Motz, James A. Wynn Jr.